UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-7460-CIV-DIMITROULEAS

KENNETH ARUGU,

    Plaintiff,

Magistrate Judge Johnson

vs.

CITY OF SUNRISE, et al.,

    Defendants.

_____/

FILED by _____ D.C.

APR 10 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## OMNIBUS ORDER

THIS CAUSE is before the Court upon Defendant City of Sunrise's Motion to Dismiss Amended Complaint [DE 19], Defendant Mills Corporation's Motion to Dismiss Amended Complaint [DE 21], Defendant Akselrod's Motion to Dismiss Amended Complaint [DE 25], Plaintiff's Second Amended Complaint [DE 24], Defendant City of Sunrise's Motion for Partial Summary Judgment [DE 27], Defendant Hodgers' Motion to Quash Service of Process [DE 35], Joint Stipulation to Amend Complaint by Interlineation [DE 37], Plaintiff's Motion for Enlargement of Time [DE 38], Defendants Schiller, Hodgers, Plunske, Herrera, Hudson, Aycock and Randazzo's Motion to Dismiss Amended Complaint [DE 42] and Notice of Incorporation [DE 43], the City of Sunrise's Motion to Compel Discovery [DE 57 and 59], and Defendants' Motion for Leave to File Unilateral Scheduling Report [DE 66]. The Court has carefully considered the motions, and is otherwise fully advised in the premises.

I. BACKGROUND

As alleged in the Second Amended Complaint, this case arose after an incident in the parking lot of Sawgrass Mills Shopping Center ("Mall") in Sunrise, Florida on September 14, 1997. Plaintiff alleges that he "was selling shoes from the trunk of his car at the parking lot of



the Sawgrass Mills Mall" when an employee or agent of the owner of the Mall approached Plaintiff in a security patrol vehicle and demanded Plaintiff stop selling shoes in the parking lot. Second Amended Complaint, ¶ 8. Plaintiff alleges that he complied, and walked into the mall to execute a purchase transaction. After making a purchase at Marshalls, a store in the mall, and upon leaving the mall building en route to his car in the parking lot, he was approached by two City of Sunrise police officers, Defendants Schiller and Hodgers, who asked if he sold shoes in the parking lot. Plaintiff said he did, and proceeded to his car to show these officers the shoes in his car. Defendants then arrested Plaintiff for selling stolen shoes. Defendants Schiller and Hodgers were joined at this time by six other Defendants, police officers Marc Plunske, Ray Herrera, Mark Hudson, Steven Akselrod, Debbie Aycock, and Louis Randazzo. Plaintiff alleges that he offered to show the Defendants his receipts for purchase of the shoes in his trunk, but Defendants rebuffed this explanation. Instead, Plaintiff was "handcuffed and publicly escorted" to the police station within the Mall. Plaintiff was subsequently transported to the Sunrise Police Department and then the Broward County jail. Plaintiff's detention lasted about 24 hours. Plaintiff also alleges that he was "beaten, kicked and thrown around" by all eight officers, and that he suffered "physical harm, humiliation, public ridicule, loss of personal reputation, and emotional distress as a consequence of his arrest with excessive force." Second Amended Complaint, ¶¶ 26, 29.

Finally, Plaintiff alleges that he was subsequently charged with two counts of battery on a law enforcement officer and one count of resisting arrest without violence. Plaintiff was acquitted at trial of all charges.

Plaintiff filed the instant complaint alleging many claims against the City of Sunrise, the

police officers and Mills Corp., as the owner of the Mall.[1] Specifically, Plaintiff alleges: 1) violations of Section 1983 for unlawful arrest against the City of Sunrise for its custom or policy of failing to properly train and supervise their officers who have a propensity for overzealousness (Count I); 2) violations of Section 1983 for unlawful arrest against the eight police officer defendants (Count II); 3) violations of Section 1983 for use of excessive force against the City and the police officers (Counts III and IV); 4) false arrest and imprisonment claims under state law against the City, police officers and Sunrise Mills[2] (Counts V and VI); 5) negligence against the City, police officers and Sunrise Mills because they should have known Plaintiff was in lawful possession of the shoes (Counts VII and VIII); 6) malicious prosecution against the City, police officers and Sunrise Mills (Counts IX and X); 7) intentional infliction of emotional distress against the City, police officers and Sunrise Mills (Counts XI and XII); and 8) assault and battery against the City, police officers and Sunrise Mills (Counts XIII and XIV).

The City and police officers have moved to dismiss the Complaint, while the City has also moved to compel discovery. Sunrise Mills has filed an Answer to the Second Amended Complaint. The Court will address the pending motions in turn.

## II. DISCUSSION

At the outset, the Court notes that several pending motions merit little discussion. For example, the City's initial motion to dismiss, filed prior to the filing of the Second Amended

---

[1] The owner of the mall is actually Sunrise Mills (MLP) Limited Partnership. Plaintiff and this party have agreed to amend the complaint by interlineation to accurately state the name of the entity that owns the Mall [DE 37].

[2] Since the information that led to the arrest came from an agent or employee of Defendant Sunrise Mills (MLP) Limited Partnership, the owner of the Mall (hereinafter, "Sunrise Mills").

3

Complaint, is denied as moot. Mills Corp. motion to dismiss for stating the wrong party can also be denied as moot, given the joint motion to amend the complaint by interlineation regarding the proper name of the Mall owner. Finally, the motion to quash service by Defendant Hodgers can be denied as moot, given the later filing of a motion to dismiss on the merits by Defendant Hodgers.

Turning to the remaining motions to dismiss, several defendants assert that the Plaintiff's Complaint should be dismissed for failure to state a claim. It is long settled that a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41 (1957). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. See Linder v. Portocarrero, 963 F.2d 332, 334-336 (11th Cir.1992) (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir.1967)).

### A. Municipal Liability

Although the City of Sunrise raised the argument in its initial motion to dismiss that Plaintiff had failed to state a claim for municipal liability under Section 1983 for false arrest, Plaintiff's Second Amended Complaint added the allegation that the police officers acted pursuant to a custom, policy or official act of the City. The City then filed a motion for partial summary judgment as to three of the claims against the City, apparently setting aside the argument regarding failure to allege a custom or policy.[3] The City's motion also seeks to dismiss

---

[3] The Court notes that the Second Amended Complaint still states in Count I that the City is liable under the theory of *respondeat superior*. ¶ 20. It is well settled that a municipality cannot be held liable under section 1983 for the acts of its employees on a theory of *respondeat superior*. Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

4

with prejudice two additional claims.

The City moves for partial summary judgment on the issue of the existence of probable cause, since such cause would terminate Plaintiff's claims for false arrest and malicious prosecution. The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.

56(e); Matsushita, 475 U.S. at 587.

The City argues that the Second Amended Complaint states that Plaintiff was selling shoes out of his car within the City of Sunrise, and as such, he was required to obtain an occupational license under the municipal code of the City. Violation of the license requirement can subject a person to imprisonment of up to 60 days. See Ordinances of the City of Sunrise, §§ 7-28, 7-31, 7-50 and 1-15(a), Exhibits A, B and C to Defendant's Statement of Undisputed Facts [attached to DE 27].[4] The City thus argues that probable cause exists for an arrest for operating a business without a license. The police reports submitted by the City and in response to the motion by the Plaintiff state that Plaintiff was arrested in part for operating a business without a license. Plaintiff argues in response that such a reason was a pretext for an arrest that was wrongfully made for possession of stolen shoes. Furthermore, Plaintiff argues that the Offense Incident Report and affidavit of Defendant Schiller indicate that the officers were part of an Anti-Theft Suppression Unit and improperly arrested Plaintiff without investigating his reason for having a trunk full of new shoes.

The "existence of probable cause is the same under both Florida and federal law-- whether a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer," Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998), and not "that a police officer actually have a subjective belief in the guilt of the person arrested." See also, State v. T.P., 588 So.2d 286, 287 (Fla. 3rd DCA 1991). Thus, it is an objective test, and not the subjective belief of the officer at the time of arrest, that governs the probable cause analysis. An officer can arrest someone based upon probable cause, yet the arrest does not become

---

[4] Municipal ordinances may be viewed at *www.municode.com*.

unlawful because the officer attached the wrong label or reason to it.  Blanding v. State, 446 So.2d 1135 (Fla. 3rd DCA 1984).  In other words, an officer can be right for the wrong reason. U.S. v. Santana-Garcia, 264 F.3d 1188 (10th Cir. 2001); State v. Cote, 547 So.2d 993, 996 (Fla. 4th DCA 1989).

In this case, there is no disputed issue of material fact that Plaintiff was offering to sell shoes from his trunk,[5] and Plaintiff was arrested in part for offering to sell those shoes without an occupational license.  See Offense Incident Report attached to Plaintiff's Statement of Disputed Facts [DE 40]; Probable Cause Affidavit, Exhibit D to Defendant's Statement of Undisputed Facts [attached to DE 27].  Thus, this Court can conclude that probable cause existed to arrest Plaintiff on the charge of operating a business without an occupational license.  This finding of probable cause leads to the granting of summary judgment in favor of the City on the claims of Section 1983 unlawful arrest (Count I) and false arrest/imprisonment under state law (Count V).

Turning next to the malicious prosecution claim, the elements of a claim are: "(1) The commencement or continuance of an original criminal or civil judicial proceeding;  2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) Its bona fide termination in favor of the present plaintiff; (4) The absence of probable cause for such proceeding; (5) The presence of malice therein; and (6) Damage conforming to legal standards resulting to plaintiff.  If any one of these elements is lacking, the result is fatal to the action."  Jackson v. Navarro, 665 So.2d 340, 341-42 (Fla. 4th DCA 1995).

---

[5] Plaintiff implies that the officers somehow entrapped him to offer to sell shoes, because Plaintiff did not approach or solicit the officers until they approached him. Affidavit of Kenneth Arugu, ¶¶ 12, 13 [DE 41]. However, even taking the facts in the light most favorable to Plaintiff, there is no dispute that Plaintiff told police "that I had shoes for sale in my trunk" when he was asked whether he sold shoes. Id., at ¶ 4.

7

The City argues that the lack of probable cause dooms this claim as well. However, the Plaintiff was only prosecuted on battery and resisting arrest violations, and not on the violation for which probable cause was found. Under Florida law, it is not clear what extent of nexus is required between the probable cause and the charges brought in the criminal proceeding claimed to be malicious. The City, however, makes the additional argument that the element of malice for this tort makes the City immune under the sovereign immunity provisions regarding intentional torts in Florida Statutes Section 768.28(9). Section 768.28(9) states that municipalities are not liable for intentional torts committed by police officers with "wanton and willful disregard." However, Florida law states such that not all intentional torts are done with "wanton and willful disregard." See Richardson v. City of Pompano Beach, 511 So.2d 1121, 1123 (4th DCA 1987), *rev. den.*, 519 So.2d 986 (Fla. 1988). Whether the intentional torts in this case were done in this manner is an issue of fact that cannot be determined on the instant motion.[6]

The City has also moved to dismiss Plaintiff's claims against it for negligence and intentional infliction of emotional distress. With regard to the claim for negligent arrest, the City argues that there is no such claim under Florida law, citing to Carpenter v. City of St. Petersburg, 547 So.2d 339, 340 (Fla. 2nd DCA 1989). That case involved a lawfully issued arrest warrant that was executed upon the wrong person, and is therefore distinguishable from this warrantless arrest case. The Plaintiff relies first on Lester v. Tavares, 603 So.2d 18 (Fla. 5th DCA 1992), which distinguishes Carpenter and states that there is no sovereign immunity for false arrest claims. However, the Lester decision implies that a finding of probable cause would defeat a

---

[6] The Court notes, however, that the issues of probable cause nexus and municipal immunity regarding the malicious prosecution claim are novel and complex issues of state law that the Court may not retain supplemental jurisdiction if all federal claims are dismissed.

8

negligent arrest claim, but stating the allowed claim in terms of an arrest without probable cause. 603 So.2d at 19. Another case cited by Plaintiff, City of Sunrise v. Goggans, 664 So.2d 1042, 1043 (Fla. 4th DCA 1995), the Court held that a City could be liable for the negligent acts of a police officer. The facts of Goggans do not appear in the decision, so it is not clear whether that case is distinguishable as well. This Court will deny the motion to dismiss at this time, however, it appears doubtful that a negligent arrest claim could survive a finding of probable cause under Florida law.[7]

Finally, turning to the claim for intentional infliction of emotional distress, to prove intentional infliction of emotional distress under Florida law, Plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. Hart v. United States, 894 F.2d 1539, 1548 (11th Cir. 1990). The Florida Supreme Court has defined "outrageous" as including:

> Extreme and outrageous conduct ..... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Metropolitan Life Insurance Company v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985).

Plaintiff alleges in general that his arrest was due to his race, and therefore is outrageous.

---

[7] As indicated below, if all federal claims are resolved, this remaining state claim involves novel or complex issues of state law, and this Court may decide not to exercise supplemental jurisdiction over the claim.

9

The Court notes that it could not find any allegations in his Second Amended Complaint that his arrest was based upon race. More importantly, the circumstances of his arrest, given the probable cause finding, and his detention for only 24 hours do not rise to the level of outrageousness necessary to maintain such a tort claim. Plaintiff's argument that his transportation in custody through the Mall in front of some business associates is somehow outrageous would make all public arrests in a place of business subject to this tort. The allegations of Plaintiff, taking them in the light most favorable to Plaintiff, do not state a claim for intentional infliction of emotional distress. Therefore, the Court will dismiss Count XI for failure to state a claim.[8] Thus, the only remaining claim against the City is for excessive force.[9]

## B. Individual Police Officer Liability

The police officer Defendants ("Officers") in this case move to dismiss all the claims against them for failure to state a claim. As to the federal claims for unlawful arrest and excessive force under Section 1983, they argue both the merits of these two claims, as well as the alternative argument that the officers have qualified immunity in this case regarding these claims.

"As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Teri Lewis and Thomas Lewis, 523 S.Ct 833 (1998); See Graham v. Connor, 490 U.S. 386 (1986). To be successful in a

---

[8] The Court does not reach the alternative argument that a claim for intentional infliction of emotional distress necessarily involves the kind of malicious behavior that invokes the sovereign immunity provision of Section 768.28(9) for intentional torts committed by police officers. See Williams v. City of Minneola, 619 So.2d 983, 987 (Fla. 5th DCA 1993).

[9] The Court notes that the City did not move to dismiss Count III, the only remaining federal claim, barring additional allegations regarding excessive force, as explained below. If all federal claims are disposed of, the Court is likely to use its discretion not to exercise its supplemental jurisdiction over any remaining state law claims, and may dismiss any remaining state law claims at that time.

§ 1983 action a party must show that: 1) a party deprived him of a right secured by the constitution and the laws of the United States; and 2) Plaintiff must establish that Defendant acted 'under color of any statute ordinance, regulation, custom or usage of any state.' Gilbert v. Sears, Roebuck and Company, 899 F.Supp. 597, 599 (M.D. Fla. 1995); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 357-58 (1974). These two threshold issues have been met in this case, as the Plaintiff's federal claims against the Officers are brought under the Fourth Amendment for unlawful arrest and for excessive force.

### 1. Qualified Immunity

Turning first to the Officers' argument of qualified immunity, this doctrine shields a Section 1983 defendant from liability for harms arising under discretionary acts, as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For an asserted right to be clearly established for purposes of qualified immunity, "the law must have earlier been developed in such concrete and factually defined context to make it obvious to all reasonable government actors in the defendant's place that 'what he is doing' violates federal law." Lassiter v. Alabama A & M Univ. Bd. Of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Section 1983 actions must allow a Defendant to reasonably anticipate that their conduct may give rise to liability. See United States v. Lanier, 520 U.S. 259, 270 (1997). "In some circumstances, as when an earlier case expressly leaves open, whether a general rule apples to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary." Id. at 271. However, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has

[not] previously been held unlawful. Anderson v. Creighton, 483 U.S. 635 (1987). Therefore, if a reasonable officer would not have acted in a similar manner as Defendants, Defendants cannot escape liability simply because certain law does not exist that specifically states that their conduct was improper.

### a) False Arrest

To enjoy qualified immunity, Defendants need only have arguable probable cause to support their arrests of Plaintiffs. Post, 7 F.3d at 1558. The standard for arguable probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997).[10] "As the Supreme Court has stated, '[t]he qualified immunity standard 'gives ample room for mistaken judgment.'" Id. at 1446; See Hunter v. Bryant, 502 U.S. 224, 229 (1991). "This accommodation exists because 'officials should not err always on the side of causation' because they fear being sued." Gold, 121 F.3d at 1446. Plaintiffs must overcome their burden in showing that Defendants did not have arguable probable cause. Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998).[11] This burden can only be accomplished with: 1) a controlling decision; 2) which existed prior to the incident in question; 3) which involved facts materially similar to those

---

[10] If qualified immunity is not present, then probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed...an offense." Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995).

[11] This burden is the only difference in the analysis between Plaintiffs' federal 1983 claim for unlawful arrest in Count II and their Count VI state law claim for false arrest/imprisonment under Florida law. "The existence of probably cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." Rankin, 133 F.3d at 1436.

12

in the case before the court; and 4) which held the conduct to constitute a constitutional violation. Collins v. School Board, 981 F.2d 1203, 1205 (11th Cir. 1993).

As discussed above in the municipal liability section, probable cause did exist for the arrest of Plaintiff for selling shoes without an occupational license. "Arguable probable cause," an even lesser standard, is clearly met in this case. Plaintiff admitted to the Officers that he was selling shoes out of his car, and his arrest followed. It does not matter that the police mistakenly believed that Plaintiff was in possession of stolen goods. Police officers may make a full arrest for even a very minor traffic offense and not be liable under Section 1983 for false arrest. See Atwater v. City of Lago Vista, 121 S.Ct. 1536, 1557 (2001) (arrest for seatbelt ordinance that only allowed for fine); Lee v. Ferraro, 2002 WL 340670, *5-6 (11th Cir. March 5, 2002) (noise ordinance – arrest of motorist for honking horn). Taking all the facts in the light most favorable to Plaintiff, a reasonable officer in Defendants' position would have been justified in making the arrest for selling shoes without an occupational license. Thus, the claims against the Officers for false arrest under Section 1983 (Count II) and under state law (Count VI) shall be dismissed for failure to state a claim.

### b) Excessive Force

"[A]ll claims that law enforcement officers have used excessive force...in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). This Court must balance Plaintiff's Fourth Amendment rights with the countervailing governmental interests at stake. Id. at 395. "'Qualified immunity applies unless application of the standard would inevitably lead' to a reasonable officer in the defendant's position to conclude that the force was unlawful." Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997). In

addition, the Eleventh Circuit has followed the Graham v. O'Connor *de minimis* force doctrine. This doctrine holds that "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). Moreover,

In this case, Plaintiff has alleged that he was "beaten, kicked and thrown around" by all eight officers, and that he suffered "physical harm, humiliation, public ridicule, loss of personal reputation, and emotional distress as a consequence of his arrest with excessive force." Second Amended Complaint, ¶¶ 26, 29. The Officers argue that this conclusory claim, without any specificity as to which Defendants applied excessive force, fails the Eleventh Circuit's tightened pleading requirements with respect to § 1983 cases. For proper § 1983 claim, a Plaintiff must allege *with some specificity* the facts which make out its claim. GJR Investments, Inc. v. County of Escambia, Florida, 132 F.3d 1359, 1367 (11th Cir. 1998). However, the Supreme Court recently may have loosened those pleading requirements. Swierkiewicz v. Sorema, N.A., 122 S. Ct. 992, 998 (2002). However, even without a heightened pleading requirement, this Court concludes that Plaintiff's conclusory allegations regarding what force was used and conclusory allegations regarding his injuries do sufficiently state a claim for use of excessive force. Plaintiff will be given one last chance to amend his complaint to meet the Section 1983 standard.

### c) State law claims

As noted above, the conclusion that probable cause existed means that Plaintiff's state law claims for false arrest (Count VI) and negligence (Count VIII) must be dismissed for failure to state a claim. The claim for malicious prosecution against the officers (Count X) presents an interesting situation not directly addressed by the parties. As noted above, Plaintiff was not prosecuted for failure to obtain an occupational license, the charge for which the Court found

probable cause to allow his arrest. Rather, Plaintiff was prosecuted for battery and resisting arrest. Under Florida law, it is not clear what extent of nexus is required between the probable cause and the charges brought in the criminal proceeding claimed to be malicious.[12] Thus, while the Court will deny the motion to dismiss at this time, should all federal claims be dismissed, the Court may decline to exercise its supplemental jurisdiction over this claim due to its novel and complex factual situation.

Turning next to the claim against the Officers for intentional infliction of emotional distress (Count XII), here the Court incorporates its analysis above in granting the City's motion to dismiss this claim. Simply put, Plaintiff has not stated a claim for this state tort.

Finally, the Officers move to dismiss the claim for assault and battery for failure to state a claim on the grounds that Florida law gives arresting officers the right to use necessary force. See Florida Statutes Section 776.05. However, though sparse, Plaintiff's Second Amended Complaint does allege that the Officers beat, kicked and threw him around. On a motion to dismiss standard, as opposed to a summary judgment standard, the Court will deny the motion to dismiss.

### C. Discovery Motions

The City has moved to compel responses to its interrogatories and requests to produce. Plaintiff argues that the pendency of the motions to dismiss somehow absolve Plaintiff of his obligations under the Federal Rules, particularly when no scheduling conference has taken place. Defendants have also moved to accept their unilateral scheduling report. Plaintiff further argues

---

[12] The Court notes that under federal law, Eubanks v. Gerwen, 40 F.3d 1157 (11th Cir. 1994), police officers cannot be sued for malicious prosecution under a federal Section 1983 claim, since the State Attorney's Office makes an independent decision whether to prosecute the plaintiffs.

15

that the obligation to submit a scheduling report is not due because Defendants have not filed a responsive pleading to the Complaint.

Plaintiff is mistaken in his assertion that a "responsive pleading" means an answer, as opposed to the motions to dismiss that have been filed. The Court's Order of September 10, 2001 uses the term "responsive pleading" to mean either an answer or motion to dismiss. Thus, the obligation to file a joint scheduling report is long past due, and the Court will enter a scheduling report based upon the Defendants' unilateral report. In addition, the Court will grant Defendant's motions to compel, though without the award of any attorney's fees.

### III. CONCLUSION

Counts I, II, V, VI, VII, and VIII of the Second Amended Complaint are hereby dismissed, with prejudice, upon the granting of Defendants' motions for partial summary judgment and/or to dismiss. Counts IV, XI and XII are hereby dismissed without prejudice for failure to state a claim. Plaintiff may file an amended complaint by April 30, 2002 regarding the pleading deficiencies in these three claims.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant City of Sunrise's Motion to Dismiss Amended Complaint [DE 19] is hereby **DENIED** as moot, given the filing of a Second Amended Complaint;

2. Defendant Mills Corporation's Motion to Dismiss Amended Complaint [DE 21] is hereby **DENIED** as moot, given the Joint Stipulation to Amend Complaint by Interlineation [DE 37];

3. The Joint Stipulation to Amend Complaint by Interlineation [DE 37] is hereby **GRANTED**, and the Second Amended Complaint shall be amended to reflect that Sunrise Mills (MLP) Limited Partnership is the proper name of the Defendant, and not

Mills Corporation;

4. Defendant Hodgers' Motion to Quash Service of Process [DE 35] is hereby **DENIED** as moot;

5. Plaintiff's Motion for Enlargement of Time [DE 38] is hereby **GRANTED**;

6. Defendant Akselrod's Motion to Dismiss Amended Complaint [DE 25] is hereby **GRANTED in part**, and **DENIED in part**, as explained above;

7. Defendant City of Sunrise's Motion for Partial Summary Judgment [DE 27] is hereby **GRANTED in part**, and **DENIED in part**, as explained above;

8. Defendants Schiller, Hodgers, Plunske, Herrera, Hudson, Aycock and Randazzo's Motion to Dismiss Amended Complaint [DE 42] is hereby **GRANTED in part**, and **DENIED in part**, as explained above;

9. The City of Sunrise's Motions to Compel Discovery [DE 57 and 59] are hereby **GRANTED**, and Plaintiff shall respond to the discovery requests by May 3, 2002;

10. Defendants' Motion for Leave to File Unilateral Scheduling Report [DE 66] is hereby **GRANTED**. The Court will separately enter a scheduling report.

DONE AND SIGNED in Chambers at Fort Lauderdale, Broward County, Florida, this _10_ day of April, 2002.

_____
WILLIAM P. DIMITROULEAS
United States District Judge

copies to:

Odiator Arugu, Esq.
Richard McDuff, Esq.
Oscar Marrero, Esq.
Earleen Cote, Esq.